# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR418-269 |
| | ) | |
| ROBERT CHRISTOPHER BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court is Defendant's first Motion to Appoint an Expert, doc. 23, first Motion to Inspect and Test, doc. 24, and First Motion to Suppress, doc. 25.  On March 20, 2019, the Court held an evidentiary hearing on the Motion to Suppress.  At that time, the Court directed defendant to file a supplemental brief on his 404(b) argument.  Doc. 32.  Shortly after the hearing, the Court also directed defendant to file an addendum regarding his motion to appoint an expert and motion to inspect and test.  All supplemental briefing has concluded and the motions are ripe for review.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendant's Motion to Appoint an Expert, doc. 23, **GRANTS** defendant's motion to inspect and

test, doc. 24, and **GRANTS** defendant's request to exclude the Government's 404(b) evidence. The Court **RECOMMENDS** the **DENIAL** of Defendant's Motion to Suppress. Doc. 25.

### I. Motion to Appoint an Expert and Motion to Inspect and Test

Defendant has requested that the Court allow him to hire an expert to test small samples of black powder and one paintball. Doc. 36 at 1. He states that he has selected Chris Robinson and that defendant expects a low-end consultation cost of $400. *Id.* If, after consultation, Robinson determines that further testing is required, the cost could exceed $4,000. *Id.* at 2. The Government has indicated that it does not object to independent inspection and testing so long as the integrity of the exhibit is not compromised, and law enforcement retains possession of items pursuant to chain of custody. Doc. 35 at 1. The Government also requests that any tests performed be done by recognized authorities or experts and be conducted in a manner reasonably likely to yield reliable results. *Id.* at 35. Finally, the Government requests that a detailed proposal for independent testing be submitted to the Court. *Id.*

The Criminal Justice Act (CJA) authorizes courts to approve expenditures for retention of defense experts, "[u]pon finding, after

appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them . . . ." *Id*. In that respect, "[t]he key balancing on a CJA request is concerned with the cost of the requested services in light of its reasonably expected benefit to the defendant. In other words, would a retained counsel representing an adequately financed defendant reasonably expend the client's monies for these services." *United States v. Salyer*, 2011 WL 1466887 at * 10 (E.D. Cal. Apr. 18, 2011) (cite omitted). The CJA also establishes that such expenditures "shall not exceed $2,400, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court . . . and the amount of the excess payment is approved by the chief judge of the circuit," or his designee. 18 U.S.C. § 3006A(e)(3). The maximum amount is adjustable, *see* 18 U.S.C. § 3006A(e)(5), but CJA regulations indicate that the limit currently stands at $2,500. *See Criminal Justice Act Guidelines* § 310.20.10, *available at* http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-3-ss-310-general.

At first blush, this case does not appear to be one for which immediate certification to the Court of Appeals is necessary. In light of

defendant's statement that an initial consultation alone may be sufficient, the Court will **GRANT** defendant's motion to appoint an expert, in part, and approve an expense of no more than $400. To that end, the Court also **GRANTS** defendant's preliminary motion for inspection of the stated items. Should defendant or defendant's expert determine that further testing is required, defendant may file a supplemental request for approval of funds. However, defendant should be prepared, at that time, to detail what testing he believes is required in preparation for a submission to the Court of Appeals for additional funds.[1]

## II.   Rule 404(b) Evidence

The Government has provided notice of its intent to introduce other acts evidence pursuant to Federal Rule of Evidence 404(b). Doc. 20. Specifically, the Government noticed the introduction of 12 prior acts.

---

[1] Defendant is reminded that he may make such showing *ex parte* if he believes that the release of information will prejudice preparation of his case. Nevertheless, defendant should be cognizant of the fact that the Court is likely to impose the restrictions and requirements outlined in the Government's response to defendant's motion for testing, namely; defendant's expert will need to comply with the chain-of-custody requirements, that the integrity of the product not be compromised, and that the testing should have basic indicia of scientific integrity.

4

1. On December 24, 1989, Bailey was arrested and cited for a misdemeanor in Los Angeles, California, for intentionally Violating a Court's Restraining Order, under California Penal Code 166.4;

2. On March 10, 1990, Bailey was arrested for Assault with a Deadly Weapon, under California Penal Code 245(A)(1);

3. On January 29, 1991, Bailey was convicted of a misdemeanor in Los Angeles, California, for Violation of Court Order to Prevent Domestic Violence, under California Penal Code 273.6(A) (A condition of probation was a firearm restriction);

4. On March 1, 1991, Bailey was convicted of a felony in Los Angeles, California, for Forgery, under California Penal Coe 470;

5. On September 24, 1991, Bailey was arrested for Battery, under California Penal Code 242;

6. On January 17, 1992, Bailey was convicted in Los Angeles, California, for Violation of a Court Order to Prevent Domestic Violence;

7. On May 19, 1996, Bailey was arrested for Robbery, under California Penal Code 211;

8. On May 29, 2015, Bailey provided false or incomplete information on his ATF Form 5400.29, "Application for Restoration of Explosives Privileges;"

9. On June 10, 2016, ATF Special Agent Paul Day interviewed Mr. Albert Maragoni, a Special Effects Coordinator and member of the International Alliance of Theatrical and Stage Employees ("IATSE"), Local 44, based in Hollywood, California. Mr. Maragoni advised that around the year 2012, while working for Nickelodeon, Bailey illegally used Mr. Maragoni's California State Pyrotechnics license to secure other

special effects work without Mr. Maragoni's knowledge. Mr. Maragoni further advised he witnessed Bailey store pyrotechnics without a license.

10. On June 13, 2016, ATF Special Agent Paul Day interviewed Mr. Richard McGee, an Assistant Business Agent (Union Representative) for the IATSE, Local 44, based in Hollywood, California. Mr. McGee advised Bailey is not authorized by the State of California to handle explosives without supervision. McGee further stated that on three (3) occasions, Bailey misrepresented himself as a special effects coordinator, thus requiring the intervention of IATSE to notify employers, including Nickelodeon, of Bailey's misrepresentations.

11. On June 1, 2016, ATF Special Agent Paul Day interviewed California Deputy State Fire Marshal Sonny Solich. Solich advised Bailey is not authorized by the State of California to handle explosives without supervision. Solich further advised that on December 29, 2014, Solich received a letter from Mr. Clark James of Oak Park, California. Mr. James wrote Solich to withdraw his reference letter for Bailey. The letter states Bailey illegally applied for permits on more than one occasion using other licensees' numbers without their knowledge.

12. On June 13, 2016, ATF Special Agent Paul Day interviewed Mr. Thomas Ceglia, special effects coordinator and owner of "Affect Me, Incorporated," based in Hughes, California. Mr. Ceglia advised that he worked with Bailey on a movie set and that Bailey misrepresented to him that had a federal explosives license. Mr. Ceglia furthers stated that Bailey illegally used Ceglia's name to acquire a pyrotechnics permit with the State of California.

Doc. 20 at 2-4. Defendant objects to the introduction of each of these pieces of evidence. Doc. 34. Specifically, defendant objects that most of the acts noticed are irrelevant to the crimes charged, that their probative value is substantially outweighed by the danger of unfair prejudice, that— for some of them—the evidence is inadmissible under Fed. R. Evid. 609(b), and that at least one of the alleged prior bad acts is inadmissible as "vague and ambiguous." *Id.*

Generally, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such evidence is admissible when introduced "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Rule 404(b) evidence must "(1) be relevant to an issue other than the defendant's character; (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) be of probative value that is not substantially outweighed by undue prejudice and meet the other requirements under Fed. R. Evid. 403."

*United States v. Patrick*, 536 Fed. App'x 840, 842 (11th Cir. 2013) (*citing United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003)).

The determination of whether the probative value of Defendant's prior crimes is substantially outweighed by undue prejudice requires a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (citations omitted). Moreover, the fact that the charged crimes are not exactly identical to the crimes proffered under 404(b) is not dispositive. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (marijuana convictions admissible in cocaine deal despite "differing nature and remoteness in time"); *United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995) ("[W]hen other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required."). Likewise, the amount of time between the prior crimes and the charged crimes is unlikely to be dispositive. There is no "bright-line rule regarding

temporal remoteness." *Patrick*, 536 Fed. App'x at 843 (*citing United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005)).

The acts listed by the Government as 1-7, are fairly far afield from those which are traditionally offered as other acts evidence under Rule 404(b). As the Government did not identify the purpose behind its use of any of the acts in its initial notice, the Court is left to wonder as to why these prior acts would be submitted. After review, the Court is hard-pressed to discern—due to both the length of time and the factual dissimilarity of the acts—that acts 1-7 show any motive, opportunity, intent, preparation, knowledge, identity, or lack of accident. Likewise, their age and dissimilarity make it likely that their probative value will be substantially outweighed by the prejudice inherent in admitting such crimes.

The remaining activities are a closer question. However, the Government elected not to respond to defendant's supplemental filing, doc. 34, on the 404(b) evidence. *See* doc. 32 (granting defendant fourteen days to file supplement and giving the Government 10 days to respond). Because the Government did not respond to defendant's submission, the Court concludes that there is no opposition. *See* S.D.

Ga. L.R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion"). Accordingly, defendant's request "that each of the 12 items of 'other act evidence' listed in the government's notice to introduce said evidence be barred from admission into evidence at the trial in the above-styled matter" is **GRANTED**.[2]

### III. Motion to Suppress

Defendant has also requested that the Court suppress certain statements made by Defendant during the course of this investigation. Doc. 25. However, before the Court reaches the question of suppression, some background is required. Defendant was working as a special effects coordinator on a film production when investigators received a complaint for improper explosives licenses on set. Doc. 28 at 2. Agents with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") reached out to defendant via cell phone to speak with him about his explosives licenses. *Id.* at 2. Agents later requested that defendant make himself available to them for an interview. *Id.* Defendant complied and voluntarily set up a

---

[2] It must be noted, at the outset, that "*in limine* rulings are not binding on the trial judge, and the judge may always change his [or her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) (*citing Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

10

time when the agents could come speak with him while he was on set. Agents arrived on set, and defendant led them to a large room with multiple exits (none of which were locked). In the room, agents showed their credentials, and asked for and were provided with defendant's ID card. Over the course of the next hour, the ATF agents spoke with defendant about his work, his prior attempts to receive his own explosives licenses, and his general understanding of the law regarding those licenses. When requested by the agents, defendant led them to a trailer containing the set's magazine which he voluntarily unlocked and allowed the agents to inspect. Defendant never requested that the agents terminate the interview. Likewise, there was no evidence proffered either in the briefs or in the evidentiary hearing showing that defendant was restrained, threatened, or coerced by agents in any way.

Defendant argued at the March 20, 2019 hearing that the Court should exclude the statements he made to law enforcement officers when they interviewed him at his work site. Defendant claimed that the officers did not indicate to him that he was being investigated and suggested that the officers misled him as to the seriousness of the consequences of his actions. He also contended that the Government

affirmatively regulates his profession and as a result he was "compelled" to speak with law enforcement officers in a way which an ordinary citizen is not. The Government, in opposition, offered a recording of defendant's interview by ATF agents.

A statement is considered to be voluntarily made only if it is "the product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Statements that result from "intimidation, coercion, or deception" by law enforcement officers are not voluntary and must be suppressed. *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). Some form of government coercion is essential to a finding of involuntariness. *Id*. at 167. In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession. *Connelly*, 479 U.S. at 163 n. 1; *United States v. Mendoza–Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992). Ultimately, the Court must determine "whether a statement was made freely or whether the defendant's 'will has been

overborne and his capacity for self-determination has been critically impaired.'" *Devier v. Zant*, 3 F.3d 1445, 1455–56 (11th Cir. 1993) (*quoting Culombe*, 367 U.S. at 602, 81 S. Ct. 1860).

Defendant has not cited, and the Court has been unable to locate, any precedent indicating that an interview with Government officials operating as part of a regulatory body constitutes compelled speech *per se*. In the absence of supporting authority—or indeed sufficiently briefed argument—the Court will not engraft such a definition onto the corpus of Fourth Amendment law.³ Likewise, the facts of this case do

---

³ At the hearing, Defendant raised the argument (in a purely conclusory fashion) that his conversation with the ATF agents in this case was involuntary because he is—or would be if he had received the appropriate licenses—regulated by ATF as a function of his job. However, counsel pointed to *no* supporting precedent as to this provision. The Court is not obligated to plumb the depths of counsel's vague assertions to create a justification to suppress defendant's statements. To the extent defendant waved at some arguments relating either to parallel investigation or pretext, they seem meritless. As an initial matter, the fact that a regulatory body is conducting a parallel investigation to a criminal one does not require suppression of statements to regulators, so long as the government official does "not make 'material misrepresentations' about the nature of the investigation or inquiry." *United States v. Psada Carriles*, 541 F.3d 344, 355-56 (5th Cir. 2008) (*citing cases, including United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977)); *see also United States v. Stringer*, 535 F.3d 929, 936 (9th Cir. 2008) ("[T]he government may conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith."); *United States v. Kordel*, 397 U.S. 1, 11 (1970) (government did not violate the Fifth Amendment right of executives when Food and Drug Administration in civil investigation when information was requested by way of interrogatories). Even if he had raised this argument, the burden would lie on defendant to prove that such misrepresentations were made. *U.S. v Harris,* 2010 WL 4962981, * 15 (N.D. Ga. 2010). Likewise, to the extent defendant argues that ATF

13

not suggest that plaintiff was compelled to speak with the officers who ultimately interviewed him. The conversation was arranged with defendant's own input, at a location he selected. Defendant was not restrained in any way, and the recording of the interview does not show that the Government agents threatened him—either with the loss of his license or any other punishment—if he chose to cease cooperating with them. In short, there is nothing in the record justifying suppression of the statements made by defendant in the recorded interview. As a result, defendant's Motion to Suppress his statements made during the course of the conversation with ATF agents should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendant's Motion to Appoint an Expert, doc. 23, **GRANTS** defendant's motion to inspect and test, doc. 24, and **GRANTS**

---

agents were required to provide him with *Miranda* warnings prior to the investigation, courts have only required such warnings in cases where a defendant made the challenged statements *in custody*. *See, e.g., United States v. Heine*, 2016 WL 6808595, *15 (D. Or. Nov. 17, 2016) ("In the absence of any legal authority to the contrary, the Court declines to expand the reach of *Miranda* to hold that the Fifth Amendment's due process clause required [an agency] . . . to warn [defendant before a deposition] that any statement he made could be used against him in a criminal proceeding."). Finally, defendant did not argue that his interrogation was *pretext*. In fact, the ATF agents clearly informed defendant that they did not know what would happen as a result of the conversation.

14

defendant's request to exclude the Government's 404(b) evidence. The Court **RECOMMENDS** the **DENIAL** of Defendant's Motion to Suppress. Doc. 25.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 19th day of April, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA